24-1088 World Shipping Council Petitioner v. Federal Maritime Commission and United States of America Mr. Hughes for the Petitioner Mr. Summers for the Respondents Morning Council Mr. Hughes please proceed when you're ready Good morning may it please the court Paul Hughes for the Petitioner World Shipping Council This case addresses whether an ocean carrier may bill a motor carrier for demerge or detention charges when two conditions are present. The first is an ocean carrier has a contract with the motor carrier and the second is that the motor carrier through its own fault delays the timely movement of containers. In our comment letter we squarely present this issue to the commission and in issuing the rule the FMC agreed with our position it said quote nothing in the rule prohibits an ocean carrier from issuing a demerge or detention invoice to a motor carrier when a contractual relationship exists. That's a joint appendix 254 but the regulation itself section 541.4 bars billing in these circumstances. When we pointed this out after the rule issued at first the general counsel told us that they agreed with our position but then later they corrected the rule by striking this preamble text but they didn't strike it completely because this issue still exists with respect to marine terminal operators where they say that marine terminal operators can bill motor carriers and they give justification for that in the preamble but that's also in conflict with the regulatory text is drafted. We think section 541.4 is unlawful for four principal reasons. I'm going to take these in slight different order from the brief. I think the first and most straightforward basis is that there's simply a failure to respond to a material comment. There was a response but that response agreed with us it got removed and there's no response to this particular issue. The second point is simply a failure to explain. I should say these issues are interrelated but there's no explanation as to why billing is disallowed in these circumstances. The third is a violation of the incentive principle which exists both as a statutory and a regulatory matter and our fourth point is that for FMC to say that all billing in these circumstances is disallowed there needs to be a determination that such billing is unjust and unreasonable and there is no determination as to this billing being unjust and unreasonable. Now my friend is going to say that there are abuses and problems with demerge and detention and that regulation is important and I want to be clear we don't disagree with the broad principle either the FMC can generally regulate demerge and detention charges nor that there are certain abuses that are appropriately regulated by the FMC. We agree with all of that and my friend is going to point to parts of the regulation where he identifies those abuses and says there's an appropriate regulatory response. Again we agree with all of that. We are focused on when there's a contractual relationship between the ocean carrier and the motor carrier and it's the motor carrier's fault for the delay and the only place in the regulation that addresses that issue agrees with us saying that there can be billing even though that's contrary to the regulatory text that was provided. On that part of it so is it the JA 257 and 258 that you're relying on where it's pages 14 339 to 14 340 I think because I think the point you're making now is even if you give effect to the correction which removes the paragraph in which the preamble most clearly took the position that you support there's still something left in the preamble that still supports the position that you support and I just want to make sure that I'm understanding that that part you're pointing to yes your honor it is the at 257 to 258 it's that paragraph that carries over about the marine terminal operators because it's talking there in that marine terminal operator context it's discussing a schedule that may be at the terminal and says if there is billing pursuant to that schedule it's clear and consistent it provides notice to the trucker and it can be enforced as an implied contract so it specifically talks about treating the schedule as an applied contract and so I just want to make sure that your position is focused on situations in which there's a contract whether implied or expressed but it's it's focused on situations which in which there's a contract not other situations in which a motor carrier might be the subject of the fee that that's correct your honor we're principally focused on what's called carrier haulage these are circumstances whereby their nature the ocean carrier has a contract with the motor carrier and so my friend is going to point to other parts before you move on my reading of this language at j257 to 258 in the terminal schedule is that if terminal schedule has some provisions in it about wharf demurrage if I'm saying this word correctly then those can be invoiced or billed that's when I read the rules about what terminal schedules can can include it says wharf demurrage is one of the fees that can be specified in a terminal schedule but that doesn't solve the problem of detention if a motor carrier doesn't return the storage container in a timely fashion that's not addressed in a terminal schedule so even as far as this goes it doesn't address the other part of the problem right I think it be addressed in the tariff but your my principal point is what this says in the page of the preamble that you can do with marine terminal operators is contradicted by the regulation that's actually adopted by 550 551.4 so even though this preamble says you can build motor carriers if there is a tariff that provides this clarity for to say demerge as your honor was suggesting the actual regulatory text that the fmc adopted prohibits billing in those circumstances so we're in a situation where the explanation so the you're saying that we should not read an exception into the regulatory text because they didn't write it that that that that we shouldn't construe the regulatory text to have the exception that the preamble says that it does in your this is why we had this we we included the email exchange between the then president of my client with the general counsel the fmc because after this rule came out we said well this is peculiar because the on the face of the preamble it seems from a policy matter the commission has taken our position and agrees with us but then how it's reduced it to regulation bars billing in these circumstances the first response from the fmc is we agree with you you can bill in these circumstances and here's how we think it's consistent with the the regulatory it's not a response from the commission it's a response from the general counsel and the general counsel doesn't speak for the commission right of course your honor i just think this provides some context because that was the first thing though that we were told when we explain why we think it's challenging if not impossible really impossible to read the regulatory text that way the next thing we found was the correction that removed part of the language not all of the language and now my friends are taking the position contrary to the email exchange that we cannot bill that it is they're not suggesting that that i'm wrong here in submitting how we read 541.4 they're saying it is a flat uh ban on billing motor carriers in all circumstances even when there is a contract and again that's why i think most basic way to resolve this case is this was clearly at issue in the regulation my client put it at issue through their comment letter the fmc thought it was at issue because it addressed it meaningfully responded to the comments and said your comment is they said it's a miss based on misunderstanding because you can bill in these circumstances recognizing billing in these circumstances is reasonable that was the position that the fmc took and to your honor's point as that's what the commission said and they've the commission as commission now that they're telling us we cannot bill has never given a reasoned articulation of why we cannot bill can i can i ask you this question so the the correction um comes about subsequently after the email exchange yep the i think that you're not challenging the correction because i don't know that i have is there a situation in which there's a correction to a rule in this way that doesn't itself go through some sort of procedural formalities that attend an amendment to a rule or a new rule you're i don't know what legal weight the correction has because it didn't undertake notice and comment rulemaking but it certainly it doesn't actually add any explanation so if fmc had tried to say well we're providing the explanation that was missing in the original rule through the correction we could have a discussion as to whether or not that's legally permissible but the correction doesn't even attempt to do that it just strikes the language leaving us with a void so there is no discussion or explanation of billing in these circumstances for your purposes i mean you're you didn't challenge the correction so you're fine with us taking the correction as legally valid you just think that even with the correction it doesn't get them all the way home because they're still a problem but i'm right in understanding as a predicate matter that you don't actually challenge well we petition for review prior to the issuance of the correction so the correction occurred after a petition for review but you also didn't raise anything in your brief about the validity of the correction i think that's right your honor but again i don't think the correction has any substantive weight it doesn't address the issues that we have put forward because there's nothing in the correction taking it as fully valid that answers our our fundamental challenges again i think easiest is they needed to respond the second they needed to give explanation third the substantive result reached is in conflict with the incentive principle the incentive principle exists both as a statutory matter and even if there are questions about that it certainly exists as a regulatory matter that the the commission itself has adopted but it doesn't matter to you i mean that's getting to the statutory argument and in terms of the various grounds that you put forward you started with the other one and that one is just as good you know i think the easiest uh route for the court is is a very simple apa based argument of the the commission had an obligation to address this issue it didn't that's a basis to to vacate and remand without having to engage in any statutory interpretation as arbitrary and capricious yes as arbitrary and capricious i think that is would be a very sufficient way to resolve the case without some of the other what i put is my third argument the conflict with the incentive principle and the fourth argument the conflict with 41 102 because that would require a determination that is unjust and unreasonable that would require the court to engage in statutory construction or regulatory construction which we would be happy to discuss again in preparing for argument that's why i inverted the order because i think the arbitrary and capricious arguments are very straightforward in terms of failure to respond to comments and failure to provide uh explain reasoning to me it's harder to see a more clear-cut case where we knew this issue was before the commission it was a material significant issue the commission thought it had to respond to it decided it favorably and and at least in its preamble discussion we thought we had prevailed on this issue now they tell us that we cannot build but there's no justification for that in the context of the rule i was going to say i'd like to visit your proposed remedies are you asking for the whole rule to be vacated or just the 541.4 we're focused on 541.4 your honor that is where we think the the that is the the challenge as i said we are not making a a view that the the fmc is disempowered from regulating nor that there could be justifications for regulations to the extent that they say things like there needs to be more specificity in the billing timely billing things of that nature we're not challenging that we don't disagree it is this is a very important range of billing where this is reasonable and that's what we're focused on your honor okay and then there are other options to remain without vacator and then also severability could you just speak to those issues as yeah thank you your honor on severability again we're focused on 541.4 yeah so i don't think we join issue on vacator on uh sorry in severability on vacator a few points about that of course the standard remedy is vacator my friends make an argument solely by footnote in their briefs suggesting against vacator is this court has long precedent in the cts case etc that a skeletal argument footnote doesn't really advance it and i think that's true here because they make uh two points they say that there would be disruptive consequences but they say that in one conclusory sentence without any uh explanation as to why returning to the status quo ante which has governed this industry for decades would lead to disruptive consequences and i don't think it can be disruptive because our position is that we turn on the existence of contracts all we want to do is be able to enforce existent contracts that's not disruptive to be able to enforce those contracts that are disruptive and the second point is they say that they can cure deficiencies but again that's a single conclusory sentence with no justification or warrant by footnote as to why the court should have uh depart from the general approach of a vacator here but is it but from your perspective as judge childs was highlighting there's no reason to deal with vacator of any part of the rule other than the specific part that you're concerned with the rest of the rule is it can be yes you're intact we're focused on this issue in 541.4 let me just make sure i understand your arbitrary and capricious argument is your argument that to the extent that the commission says that it's only going to allow invoicing with parties that are in contractual privity with the ocean carriers or the marine terminal operators you don't dispute that proposition you're just saying that they didn't implement that proposition or they didn't implement that theory of efficiency or however you want to put it is that your argument yes sir that's why and again i know it's not in the rule but that's why my client before bringing this petition for review wrote to the the commission because what my client wants is exactly what the operative rule so what we are asking for is for what the fmc said in his preamble text was the result to actually in fact be the result so that is the the the net result that we are requesting thank you can i just um um ask you one question about statutory part not because i necessarily think we need to get to but i'm just just actually just curious about this in um and this is your second statutory argument in 4102 the provision speaks in terms of a common carrier marine terminal operator or ocean transportation intermediary cannot fail to establish observe and enforce just and reasonable regulations and practices etc are the regulations that's being referred to in that is that regulations of the regulated parties or is it regulations of the agency that regulates i think because it says regulations and practices your honor i think it is it is confusing but i is talking about the practices of the parties not the regulations of fmc and this language as we talk about in the briefs is common in uh schedule in in statutes where um commissions govern the tariffs and tariffs system so it's common in the fir context and elsewhere and let me just add a point there that we made in our opening brief it's at joint appendix 41 uh this is the interpretive rule that's so critical and this just points out the commission sees the statutory construction the same way um the commission says the commission may quote-unquote issue regulations prohibiting certain practices determined to be unjust and unreasonable and the dc circuit has affirmed this authority that's what the commission says in the interpretive rule we agree with that uh that's how we think the statute works under 41 102 they just have to make the determination that the practices they're prescribing are unjust and unreasonable and with respect to situations where there is a actual contract between ocean carrier and motor carrier there's been no finding that it's unjust and unreasonable rather that it's to the contrary the struck part of the preamble suggests it is reasonable in the part of the the preamble that talks about marine terminal operators says of course it's reasonable when you're operating pursuant to a tariff which again isn't a one-on-one contract it is a an implied in law contract we're talking about where our client our members have express contract express real contracts with motor carriers uh so to finish the completion of the freight's journey thank you council we'll give you a little time for rebuttal mr somers good morning so uh contrary to what the court may have heard uh the commission did not agree uh with the shipping council's uh interpretation of of its rule um our position is that the regulatory text itself has always been very clear not just the regulatory text itself has been very clear that trucker billing is not allowed in this context but the nprm was very clear about what the agency was proposing the preamble itself in every other location except for the one paragraph that's been discussed was very clear that billing truckers was not permitted in this circumstance and then the correction that's been discussed was again very clear truckers can't be billed in this circumstance so the one paragraph um was very clear in the opposite direction your honor it was a garbled paragraph as we pointed out uh two of the garbled it seemed to me actually wasn't garbled it seemed to me it was clear it may have been it may have been garbled as to what the result of that is but the paragraph itself spoke pretty clearly if you didn't put it this way suppose there was no regulatory text and all you had was that paragraph wouldn't it be pretty clear what that paragraph said i i understand the reading i understand that reading it did not reflect the commission's position that paragraph i think it's fair to say that it was uh and at best ambiguous and erroneous and it was something that's why we chose to correct the text and make it extra clear it it really did not was not consistent with all the other factor all the other elements that i've mentioned most importantly the crystal clear regulation itself the regulation was issued at the same time as that preamble so that's the regulation is what actually i mean to me it actually does seem pretty it the the paragraph that was that was sought to be excised by the correction actually seems pretty consistent with a lot of what's in the rule because it's focused on whether there's a contract and the idea the underlying principle is that the contracting party is in the best position and so we ought to make sure that the fee is directed against a contracting party and then we do i think your your understanding would be totally understandable if there were a situation in which the motor car carrier could have a contract then everything fits together but i don't think you dispute that there are situations in which a motor car carrier can not just have the implied contract which is discussed in the rule but actually have an express contract and if there is an express contract and it seems to me to be fairly consistent with the rule absent some explanation to the contrary that i'm not sure is in here as to why that what was in that paragraph wouldn't be what you would expect which is in those situations in which there is a contract yeah you can put the fee against that contracting party consistent with everything else we're saying here that the focus ought to be on the contracting your honor i think the distinction that's important to get is the contract that matters the one under section 541.4 is the contract for ocean carriage that's the contract made between the shipper and the carrier not a carrier haulage contract that's that's a different contract and i'll get to that in a minute but the one that the rule focuses on is who is a party to the ocean carriage contract that's not truckers so they're not part of that contract it's not a general contract privity standard it's based on who is party to and was the ocean that was that added as part of the correction no that was always clear in the rule it's right in the regulatory text of 541.4 which also contains a clear explanation of why mtos can build truckers that's because they have a different type of contract contract for storage of cargo under 541.4 under the clear language of the rule there's no inconsistency with the preamble's explanation that truckers can be built by mtos because the rule specifically provides that different type of contract for storage of cargo different from the ocean carriage contract the kind of contract that mtos make with truckers to store store cargo on site and make sure there's no inconsistency i'm not sure i understand you so the mtos based on the terminal schedule that's what you're talking about now yes that's right so what regulation allows the mto to build the truckers it is the same regulation that we're talking about 541.4 refers to two different types of contracts one is the contract for ocean carriage the shippers make with the ocean carriers and the other is a contract for the storage of cargo and that's the kind of contract that an mto may make with a trucker and that's why it's permissible for them to build truckers it's under the express terms of the rule while while we're on the express terms of the rule it may be skipping ahead a bit but in terms of the remedy perhaps my colleague can can explain further but our understanding is what they're seeking here in this case is essentially to add truckers to the list of parties who can properly be built certainly not as your honor was asking not to strike down the entire rule but under my understanding not even to strike down 541.4 but simply to add truckers to the list let me ask you a question about language that appears at ja257 which is page 14339 in the fmc response it's in the bottom first column where it says that after careful analysis the commission has determined that prohibiting billing parties from issuing the marriage and detention invoices to persons with whom they do not have a contractual relationship will best benefit the supply chain has that language been modified or omitted or or changed i think in that circumstance your honor the contract that was being discussed was the for ocean carriage it's true that at times in the preamble there is not a full perhaps a full statement of exactly which contract is being referred to but that language that that you've read was referring to the contract for ocean carriage at times as the discussion goes on within the preamble it may be that it does not always include all clarifying language it may start to abbreviate okay well let's go to the next page ja258 in the far right column so this is paragraph i'm sorry page 14340 of the federal register volume 89 and there was a question about whether it's proper to allow insignees to be invoiced and the commission responds that yes it's it's proper and that's where we're going to change the final rule to allow consignees to be billed when the consignee is the party contracting for the shipping and is therefore in contractual privity with the carrier that language was never amended or in the preamble right that was never changed and it reflects my message that the contract that matters is the one for ocean carriage when we're talking about okay so where in the regulation does it say that the only consignees that can be invoiced are ones that have a contract with an ocean carrier i believe that is made clear in 541.4 what we're show me the language in 541.4 that says that because all it says is that a properly issued invoice may be given to the consignee and it doesn't say the consignee that's in privity it just says consignee i i believe my reading of the of the regulation is that it's a party that has a contract for ocean transport or storage and the consignee is listed after that or the consignee so so what part of subparagraph one is grafted into subparagraph two i mean they're two separate things i i think the the idea the overall reading that we would put forward for that is that the intention there is that the consignee is in a similar position to the uh the shipper or usually the shipper and therefore that's that reflects the same basic analysis and the same underlying here's my basic concern and you tell me why i shouldn't have this concern my concern is that the commission's reasoning seems to be that it's fair to invoice where there's contractual privity but they omit some parties that have contractual privity from being invoiced i.e truckers and then they include some parties consignees even without contractual privity if if i disagree with your reading of this regulation so so i come away with that feeling that the regulation is arbitrary and capricious because it doesn't implement what the commission said that it was trying to implement so tell me why i shouldn't have that conclusion your honor i think the standard is whether the parties involved are involved with the ocean carriage contract and are likely to be aware and are aware of the terms especially the terms that relate to the charging of these late fees so the commission's determination was that obviously it's the shippers who are making the contracts that set the terms but also consignees typically are involved and aware of those terms as well uh regardless of the exact way that their relationship to the agreement may be defined if they're aware of the terms if they aren't in privity i mean how is a consignee let's suppose that there's a contract between the ocean carrier and a motor carrier that says that the motor carrier under these circumstances would be responsible for the demurrage charges even if the consignee is aware of that contract if the consignee gets invoiced for those demurrage charges how are they going to recover that from the motor carry their that contract they can't they're not a third party beneficiary or what what's their theory of liability to to sue and recover the motor carrier recover from the motor carrier those demurrage charges your honor if i if i understand the the question i think that that kind of carrier haulage contract is a separate type of contract i think that our rule only reaches demurge and detention charges charged by in this context by the ocean carrier if they were to the rule would prohibit such charges being sent to motor carriers regardless of the contract congress said determine who my point is you say in your brief and the commission said in the preamble that look if there's an instance where the consignee is invoiced for demurrage charges but really the motor carrier is is really the cause of those charges and there's a contract between the ocean carrier and the motor carrier that specifies that under these circumstances the motor carrier is responsible for those charges that it's fine for the ocean carrier to invoice the consignee because ultimately they can recover from the motor carrier and i'm asking you how um your honor i i'm not sure that's necessarily um you don't think you said that in your brief if you want me to point point you know if you say so i think it may be that parties to the ocean carriage contract have assumed the risk of certain causes to the delays that we're talking about that are outside the range of the rule but we looking at the commission was trying to create a rule for the entire system that would help the whole system work in a more reasonable and efficient way we're we're here focusing on a very specific event it's it's the case that the ocean carriers have a lot of market power and they may make these carrier haulage contracts with the truckers we're not saying that they have no remedies against the truckers we're trying uh because they do have those other contracts and they have a lot of market power they have a lot of power to shape conduct of the truckers but what we're saying is um in this in this system that we're trying to look at more broadly than the claim of the world shipping council it serves the system best including the incentive principle and the other principles in the interpretive rule which include transparency and more efficient dispute resolution to to have this rule this is where the commission drew the line based on the parties involved it may be that in a particular circumstance the rule doesn't doesn't align perfectly for for everyone in the system but our effort was to create an overall system that was more more effective than the system that we saw before and that congress identified as having significant abuses during the pandemic for you to answer explain to me what you said on page 36 of your brief which is that in the event that a third party such as a trucker is at fault for a delay the build parties have recourse against that third party for reimbursement as they generally do have commercial relationships and strong incentives to continue those relationships so how would that recourse work for a consignee that is billed for a demurrage charge that was the fault of a motor carrier well i think the consignee could dispute that charge and dispute with who dispute it with the ocean carrier and say what what under the regulation would give them a leg to stand on well the regulations require that there be if you look at the statute section 41 of 41 104 d which is the the new provisions that govern the content of invoicing under for demurrage and detention it specifies i believe 13 different elements that the invoices must have and so they can object that the invoice okay but so that's just about what the invoice has to to to include but but let's say they included all of the things that they have to include it's not about the substance of what the invoice it's about just generally should they be responsible for paying well in some of the some of the elements do get into the substance of whether the invoice is properly created and properly directed including for example i believe the last element requires that the carrier confirm that it did not cause or contribute to the delay itself so some of those elements do the carrier did not yeah that's right so it's clear that the ocean carrier is like clear i didn't contribute to the delay the motor carrier did but but i'm going to go ahead and charge the consignee for the demurrage or the detention well i think it would be for the consignee to decline that and you know this is based on a hyper consignee could decline to pay the invoice i think they could say yes if they say we're not responsible for this invoice this isn't giving the carrier the right to collect from any either of the two entities identified does the regulation say that they are properly invoiced for that they are properly invoiced as a category a type of party but that doesn't mean that every bill sent to that party is necessarily payable it has to meet other requirements what happens if they refuse to and then the and the ocean carrier says um you owe us this money and and and you either pay it or we'll sue you or we won't you know deliver any more product to you well i think what happens then you've identified um mechanisms by which the carrier could seek recourse in the event that some bill that they've sent is not paid and that's true also in terms of their billing of motor carriers which they seek to want to do i mean what's what's really at issue here is that when they have a contract with a motor carrier they want to be able to bill that that party and but you said in your brief that the consignee would have recourse against the trucker that's what you say at page 34 i don't know how do they have recourse against the trucker i believe what that language is trying to say was that the ocean carrier would have recourse not that consigning would have recourse you said the build parties will have recourse against the third party the third party being the trucker so how is the ocean carrier to the build party they are the billing party yes that's true if we said that that may have been erroneous but i think the consignee could contact the motor carrier and seek to negotiate reimbursement i mean if they felt that they were responsible for the charge so this this these are general rules and there may be circumstances when they don't work perfectly but in an effort to look at the entire system holistically and create rules that would improve the prior system as congress directed the commission to do congress did direct the commission to determine who may be appropriately billed can i can i go back on that score can i make sure i'm not on that score can i go back to this question about how we apply the scenario how we apply under the regulation the scenario in which the motor carrier has a contractual relationship with the mto under a schedule which is discussed at ja257 and 258 so i take it that what you're saying i just want to make sure i understand your argument that you started with you're saying that in that situation actually the regulation does allow for invoicing the motor carrier and that's because that's a storage of cargo contract that's right and so therefore under 541.4a one the motor carrier is a party that can be invoiced and so if that's the case then i thought i'm going to be interested to hear what the other side says on this because i i assume that's going to be news to them but if that's if that unless i'm misunderstanding the context entirely but if that's the case then why was it under at regulation at um 257 258 of the joint appendix in the preamble there's no reference to the regulation i mean it's time it says that such schedules are enforceable as implied contracts and it references 46 usc 4050 40501f and 46 cfr 525.2a2 wouldn't have been just just have been easy just to say well under the regulation this is totally presentable that's why it speaks in terms of storage contracts i understand that concern your honor um i think it number one it's not directly at issue in this case uh but it may well be that it would have been better kind of an issue because i think we're just trying to understand the extent to which there's some rationale in the rule for why circumstances in which motor carriers who are in express contractual privity with the billing party can't be invoiced and this is this is speaking about that and you've made the representation that the regulation actually did mean to cover that in this particular context of the schedules and it meant to cover that by use of the term storage of cargo and i'm just wondering if that's the answer that seems like that would have been a very straightforward answer to put in the preamble but it's not in there which makes me wonder whether that is in fact the right way to read the regular read the regulation your honor it may be that there was an assumption at that point in in preamble that that had been gone over earlier i believe the anprm and they have discussed the differences in those contracts as well uh between the contract for uh storage of cargo versus ocean carriage so is that discussed beforehand in detail and okay it is discussed in the but there's not even a reference to the term so the regular i had not appreciated this argument before and maybe i but i had not appreciated this argument that there's a storage of contract there's a storage of cargo contract that allows for the levying of the invoice under the terms of the regulation and i guess it's just surprising to me that that wouldn't have been explained in the exact part of the preamble in which this issue is discussed right i think it was in the anprm that um there was a discussion of the different types of contracts covered and that the distinction between this contract for storage of cargo versus the ocean carriage contract may have been spelled out um that might have been at 87 federal register 8507 that's the that's the site i have but in any event i think i think that point of the preamble there may have been an assumption that the regulatory language was was clear but it may well have benefited from the kind of explanation you're pointing to i i don't know the next sentence says this is a very different situation than where a motor carrier um let me see i just lost my place it's a very different situation than where a motor carrier is billed for demerger detention and the motor carrier has no contractual relationship with the billing party and is not privy to the specifics of the contractual agreement i mean if i read that sentence then i would have thought the negative pregnant of that is the situation in which the motor carrier is in a contractual relationship with the billing party and therefore is privy to the specifics of the contractual agreement but there's at least some circumstances in which that's the case where you'd say well even though that's the case the regulation still bars invoicing the motor care yes where they are in in privity in that context is when there's a contract for storage of cargo so perhaps it could have been more clearly stated there but i'm right in saying that the upshot of your view is that even in situations which the preamble denominates is very different but even in situations in which a motor carrier has a contractual relationship with the billing party and is privy to the specifics of the contractual agreement the motor carrier still cannot be invoiced that regulation encompasses at least some of those situations i get in your argument now that when you're talking about storage contracts it doesn't encompass those but there are other situations in which there is an express contract and there's privity and therefore awareness of the specifics but nonetheless the regulation bars the invoicing of the motor carrier yes i i think that's right your honor and i think when congress told the commission to define which parties may be appropriately billed they expected the agency that they weren't saying define it unless the ocean carrier wants to make a different contractual arrangement with one of the part another party like a motor carrier the congress meant for us to define who can be properly billed as a general category so yes that that would exclude motor carriers where they were not parties to the operative contract the one that we're concerned with the one that sets the terms of demergent attention so i i realize i'm over time if i just make a couple you may have more questions yeah i just wanted to go into just a little bit about the contradiction or the correction that once you became aware of that contradiction between the preamble and the final text final rule rather it just seemed like it was treated pretty much ministerial and so i wanted to know do you consider there to be a more formal process generally rather than these emails and does a correction generally become part of the final rule i think the correction modifies the preamble to the final rule i mean the terms used here can be confusing the final rule often refers to the entire publication that includes the regulatory text plus the preamble there's been no change to the regulation there has been a change to the lengthy explanation of the regulation that is the preamble to make sure it's consistent with every other part of the preamble where billing of truckers in this setting was clearly rejected and the council clearly understood that uh and to make sure because council is also asking that all of that information be amended or included in the record that's correct your honor we don't think that's appropriate i think those were informal guidance oriented emails involving fmc staff as was noted earlier that's not the same as the statement of the commission but there's also no ability to comment on any of that information our position is that it wouldn't be required to have notice and comment for something that was merely correcting one paragraph of a preamble you didn't consider that substantive not it's no change at all to the regulation it is clarifying and correcting arguably erroneous information in one paragraph of a preamble so i i believe that meets the standard for something that the agency can just correct and it was done before the effective date of the rule so there's no real potential for confusion as far as the emails go um i think in the early stages there was an effort to understand what was being requested and to reconcile the preamble text with the remain at issue with the remainder when greater understanding occurred and it was clear what the question was the main focus of those emails was to ask the council to direct a formal request to the commission to clarify or or change the rule and that's something that the council can do anytime we've noted there's no there's been no real evidence presented that this is a substantial problem for the for the council other than hypotheticals and general descriptions but if the council wishes to request that the commission reconsider the substance of the rule identifying evidence as to the problems it's causing them it's always free to do that but it hasn't done that it's filed soon so certainly then one last point um your opposing council has asked that 541.4 uh be vacated with respect to the rule what's your position on that or is severability an option i think that it need not be vacated because their objection appears to be so limited our understanding is that they have not challenged the identity the structure the current structure of 541.4 in terms of saying here are the parties who can be billed this type that type i think my my reading and my my friend can clarify is that they wish a third category to be added and that is trucker motor carriers when they have a contract with the ocean carrier for carrier haulage i think that's a that's a very limited addition i don't think that would require even vacating 541.4 but a remand with instructions to modify and explain would would make more sense because at this point when the rule has been in effect for almost a year it would be disruptive uh to reverse to the prior system i think at this and it is something that an explanation-based objection could be addressed in that way at a minimum i have a a question if there's an ocean carrier that entered into a contract with motor carriers let's say in 2020 where that that said that the motor carriers would be responsible for demurrage and detention charges um you know when those charges were incurred through the fault of the motor carrier but so say that those contracts existed beginning in 2020 with the promulgation of this rule um those ocean carriers can't invoice those motor carriers anymore right that's right so so the rule has the effect of essentially abrogating those contracts to the extent that such a contract exists i do think federal law would generally um take precedence over a private contract once once it's in effect once it's in effect yes so so how is that consistent with your friends on the other side and their opening brief at page 10 talk about the shipping act of 1984 and what its purposes are and it says that one of the purposes of the commission is to regulate common carriage of goods by water and the foreign commerce of the united states with a minimum of government intervention and regulatory costs and then they go on to say that another thing that it directs the commission to do is to ensure an efficient competitive economical transportation system etc etc by placing a greater reliance on the marketplace so to the extent that this kind of underlying statute congress express an intent for the greater reliance on the marketplace how is a regulation that abrogates a contract that was negotiated by parties to deal with this issue consistent with that statute how is that efficient how is that um placing a greater reliance on the marketplace your honor i think that was uh impetus of the 1984 revision to the act but i would uh or rather the 1984 shipping act but there have been revisions since then and the most recent one in 2022 the ocean shipping reform act of 2022 where congress directed us to create a rule like this was clearly pushing in a more regulatory direction because of the abuses in the system that congress and the commission observed during the pandemic abuses that are clear from the legislative record that are clear from the commission's fact funding 29 investigation so i was saying that the 2022 act somehow overruled what congress said in the 84 act the 2022 act was a more specific direction to regulate in a very specific area a very limited area of the act that i wouldn't call it i would call it revising and refining the act and that's what the commission tried to do with its rule to follow congress's direction based on what congress saw and documented in during the pandemic to create a more a more refined and yes to some extent more expanded regulation in this area and that's clear from the statutory changes that the ocean shipping reform act of 2022 created in 41 104 d and f where congress was clearly very concerned to limit the types of billing the parties to whom you could send these bills and also regulate what the bills could say so i think it's correct to say that the 1984 act was deregulatory relative to what was seen before but i think congress's more recent direction is in the other direction and does does authorize what we did here make sure my colleagues don't have additional questions thank you thank you counsel jesus will give you two minutes for rebuttal thank you your honor um just to start with the new argument about the marine terminal your honor's right that's not one we had seen before i don't think that argument works though for a few reasons the first is 541 talks about billing the party on whose account the storage is for there's no sense that the storage is for the count of the motor carrier that's my first point the second is when you look at the regulatory text it also says the marine terminals can bill for detention well the tension has nothing to do with storage that is about keeping the containers out for too long and preventing them to come back into the flow of freight fluidity so that also doesn't work for that second reason and my third point is even if we're wrong about all that which i don't think we are this was just an additional example of this rule being arbitrary and capricious i don't think it takes away from our broader showing that the whole purpose of this rule is about contractual privity and that's what our essential point here is is the preamble as written which focuses on enforcing contracts and that's fair for all parties involved we think the the preamble yields a sensible result the problem is 554.4 does not achieve what the preamble described that's arbitrary and capricious failure to to give reasons failure to respond to comments in terms of remedy we do think that vacating 541.4 is the critical issue it's the set-aside relief under the apa it's because 541.4 is what is harming us it's precluding our members from billing motor carriers pursuant to existing contracts that these armlanes parties have already negotiated that's what is causing the harm i don't think this court can pull out a pen and add motor carriers to a list that's not a remedy that we have available the remedy that we have is a set aside of the provision we're not asking for a broad set aside of the whole regulatory package rather the sole piece of the regulation that harms us they say that there's no evidence in the record that such contracts exist there that is inaccurate your honor and i can describe this for a bunch of reasons first the fact that these contracts these carrier haulage contracts were described in such length in the original preamble at 254 demonstrates that they exist there's substantial record evidence of this so in the interpretive rule at j61 the maritime commission describes carrier haulage at length and describes how this is a common way of shipping when i say carrier haulage i mean that's distinct from merchant haulage carrier haulage is a scenario in which the ocean carrier has a contract not just to deliver the the freight to a port but to deliver it to the consignee wherever the purchaser the customer is preferred place in those circumstances the the ocean carrier always has to to contract with inland transportation which is typically with motor carriers the the record evidence talks about for example the port of new york and new jersey this is a j195 footnote 9 85 of that car was moved via truck the third reason that this is described is in the world shipping council comment at pages j214 to 215 we explain this scenario and the commonality of it our brief fourth provides a reply 16 to 17 cases that talk about this carrier haulage and disputes between motor carriers and and ocean carriers demonstrating this occurs this is a frequent pattern you can look to the supreme court's decision in in norfolk southern verse kirby that talks about these uh uh it's called a through bill of lading the through bill of lading that uh brings the the uh the goods to the ultimate destination is quite common in all those situations with a through bill of lading you have carrier uh uh haulage and then the the emails as the email traffic said i think i think the email traffic confirms this idea about a through bill yes your honor it's exactly right it's a through bill of lading and then the last point your honors when standing was challenged not talked about i don't think there's a a real challenge there but we put up five member declarations and when you when the court looks to those member declarations each of them talk about existing contracts that those uh five members of ours presently have with motor carriers that are impaired by this rule so that is in the declarations that we attach to our reply brief to demonstrate standing i think there's an abundance of evidence that this is very frequent and again we're here on behalf of of the ocean liner shipping industry because this matters because this matters an enormous deal at the end of the day the preamble is written makes sense it's about contractual privity it's about enforcing contracts the notion that demerge and detention has problems in the absence of contracts we don't dispute we think the preamble as written leads to a sensible place the regulation simply did not adopt that that's arbitrary and capricious and there should be set aside of the portion the sole portion of the regulation that bars billing in these in these circumstances thank you counsel thank you to both counsel we'll take this case under submission
judges: Srinivasan; Wilkins; Childs